**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Gregory K. Adamson, | No. CV-05-2286-PHX-JWS (LOA) |
| Plaintiff, | **ORDER** |
| vs. | |
| Michael Hayes; Chad Watts; Dennis Dollarhide; Johnny John; Michael Dobson; Christopher Eastman; Charles Bridges, Jr.; Robert Papke; Elliot Campbell; Paul Gruetzmacher; Felipe Amezquita; Anthony Miller; Paul Viso; City of Tempe; Joe Arpaio; Maricopa County, | |
| Defendants. | |

**I. Background**

**A. The allegations**

On July 30, 2003, the Tempe Police Department received a 911 emergency call from an employee of Eckerd's Drug Store, located at the corner of McClintock and Broadway Road in Tempe, Arizona. (Doc. 56 at 1-2) The 911 caller reported that Plaintiff Gregory K. Adamson ("Plaintiff ") was allegedly holding a woman at gunpoint in the Eckerd's parking lot. When the police officers arrived on scene, Plaintiff failed to follow their commands to surrender. Plaintiff eventually left the scene in his vehicle and several police officers followed him. (*Id.* at 2) The police officers surrounded Plaintiff at the Champions' restaurant parking lot in Tempe and again requested that he surrender. (*Id.*; Doc.

1 4 at 4) Plaintiff failed to surrender and Officer Mike Hayes used less-than-lethal force to
2 subdue him. Plaintiff claims that Defendant Officer Hayes shot the "unarmed Plaintiff in the
3 back 4 times with [rubber bullets] as Plaintiff was surrendering peacefully." (*Id.*) Plaintiff,
4 who claims to be a minister, asserts that he was attempting to offer assistance ("first aid
5 prayer"[1]) to the woman in the Eckerd's parking lot, that he did not have a weapon on him
6 at the time of the incident, and that the Defendant officers had no cause to aim their weapons
7 at him or to use any force on him. (*Id.* at 7)

8 After being arrested and refusing medical treatment, doc. 56 at 14, Plaintiff
9 was booked into one of the Maricopa County jails. While in jail, Plaintiff was allegedly
10 denied timely access to his public defender, prevented from using the law library, denied
11 medical care and wrongly placed in solitary confinement. (Doc. 56 at 2)

12 The August 29, 2005 *pro se* Amended Complaint seems to allege three general
13 claims: (1) use of excessive force and arrest without probable cause in violation of the Fourth
14 Amendment, and other violations under the Fifth, Eighth, and Fourteenth Amendments to
15 the United States Constitution, all purportedly actionable under 42 U.S.C. § 1983; (2)
16 Defendants' failure to train, supervise, and monitor their employees; and (3) violation of
17 Plaintiff's right to Due Process by Defendant Arpaio. (Doc. 4 at 4)

18 This case languished in the District Court for an extended period of time while
19 Plaintiff either represented himself or was represented by different lawyers until October 19,
20 2010 when the case was reassigned to the Honorable John W. Sedwick, United States
21 District Judge. (Doc. 128) On November 1, 2010, Judge Sedwick denied without prejudice
22 the then-pending motions for summary judgment, docs. 98, 104, filed by Defendants on June
23 23, 2009 and August 12, 2009, because "the existing motion papers have grown stale[,]" and
24 directed the Clerk of Court to appoint a magistrate judge to the case. (Doc. 129 at 2)

25 By random lot assignment, this § 1983 action was referred to the undersigned
26 Magistrate Judge to whom Judge Sedwick "delegate[d] responsibility for conducting [a]

27
28     [1] See, doc. 4 at 7.

- 2 -

1  competency hearing and determining [Plaintiff's] competency pursuant to 28 U.S.C. §
2  636(b)(1)(A). If [Plaintiff] is found incompetent, the magistrate judge is further directed to
3  appoint a guardian *ad litem* pursuant to Rule 17(c)." (*Id.*) Judge Sedwick further directed
4  that "[i]f a guardian *ad litem* is appointed, the guardian should have an opportunity to oppose
5  the defendants' [anticipated] motions for summary judgment." (*Id.*)  After Plaintiff's
6  competency is determined and a guardian *ad litem* appointed, if appropriate, a new Rule 16
7  scheduling order regarding a dispositive motions filing deadline will be entered in order to
8  manage this case without further delay.

### B. November 30, 2010 scheduling hearing

10  On November 4, 2010, the undersigned set a Rule 16 scheduling conference
11  in Courtroom 302, Sandra Day O'Connor U.S. Courthouse and ordered counsel for
12  Defendants and Plaintiff to be physically present "to discuss, among others, the date to
13  conduct a competency hearing to determine Plaintiff's competency, whether the parties
14  desire to conduct any discovery on the issue including the scheduling of an Independent
15  Mental Examination pursuant Rule 35, Fed.R.Civ.P., and a memoranda deadline prior to the
16  hearing for the parties to set forth the relevant law on the standard or measure to determine
17  a plaintiff's competency in a District of Arizona civil case." (Doc. 130 at 2)

18  At the November 30, 2010 scheduling conference, *pro se* Plaintiff, a resident
19  of Chino Valley, Arizona; his companion and driver, Louise Nowell; and defense attorneys,
20  Maria Brandon and Clarence E. Matherson, Jr., were present. Confirming on the record that
21  they possessed copies of Plaintiff's medical records identified in Judge Sedwick's November
22  1, 2010 order, counsel for Defendants stipulated that Plaintiff was presently incompetent and
23  unable to represent himself and declined the Court's invitation to conduct an Independent
24  Mental Examination pursuant Rule 35, Fed.R.Civ.P., even though the Court would have
25  authorized a defense IME despite discovery having closed on April 15, 2008. (Doc. 65 at 2)
26  At the hearing, Ms. Nowell proffered her lay opinion, based on her personal knowledge of
27  Plaintiff, that Plaintiff is not presently mentally competent and is unable to safely drive a
28  motor vehicle.

1        At the conference, Plaintiff provided counsel and the Court with a copy of a Yavapai County Superior Court minute entry, dated September 22, 2010, issued in a pending civil case entitled *Adamson v. Curtis*, Case No. P1300CV20050103. In this minute entry, Superior Court Judge Ralph M. Hess indicates:

> Plaintiff Gregory K. Adamson ("Adamson") has filed several motions to stay these proceedings seeking the appointment of an attorney and guardian *ad litem*. The Court has denied Adamson's requests for appointment of an attorney for the reason that he does not have the right to court appointed counsel in this civil matter. **The Court has also determined that Adamson is incompetent and in need of a guardian *ad litem***; however, Adamson has been unable to nominate anyone to act as his guardian *ad litem*. . . .

Exhibit 1, page 1, identified at the November 30, 2010 scheduling conference (emphasis added).

       In his November 1, 2010 order, Judge Sedwick noted that Plaintiff has filed a psychologist's report, dated August 2, 2010, identifying Plaintiff's "various mental issues." (Doc. 129 at 1)  After conducting "a Neuropsychological Mental Status Exam," Stephen C. Gill, Ph.D., a Sedona, Arizona licensed psychologist, citing Arizona Revised Statute § 13-4501, concluded that Plaintiff does not "show the requisite capacity to play an appropriate role as a plaintiff in a legal proceeding" or "to participate with an attorney in providing pertinent facts necessary in a court proceeding." (Doc. 123-1 at 1)  Upon a July 28, 2010 evaluation, Dr. Gill found Plaintiff "easily confused, scattered, and lacking sustained focus. He was highly forgetful in the short term. It was difficult for him to find the right word, phrase or sentence to provide an explanation in response to a number of questions or instructions. For example, on a screening measure of cognitive assessment, [Plaintiff] scored poorly on word recall and verbal fluency. Category cues and multiple choice cues did not improve the quality of his verbal recall." (*Id.*)  Dr. Gill diagnosed Plaintiff "with Post Traumatic Stress Disorder; Obsessive Compulsive Disorder; and Cognitive Disorder, (by patient report) NOS." (*Id.*)

       At the November 30, 2010 scheduling conference, the parties agreed that it was unnecessary to schedule and conduct a contested competency hearing because it is undisputed that at this time, Plaintiff lacks the mental capacity to proceed *pro se* in this §

- 4 -

1 1983 action without representation by counsel. The Court agrees.

2 **II. Federal Rule of Civil Procedure 17(c) and Guardians *ad litem***

3 The Ninth Circuit has established that "[i]f an infant or incompetent person is unrepresented, the court should not enter a judgment which operates as a judgment on the merits without complying with Rule 17(c)." *Krain v. Smallwood*, 880 F.2d 1119, 1121 (9th Cir. 1989); *Allen v. Calderon*, 408 F.3d 1150, 1153-54 (9th Cir. 2005) ("Because there was sufficient evidence of Allen's incompetence, the district court abused its discretion in dismissing the petition for failure to prosecute without first holding a competency hearing or otherwise considering his claim."). "The absence of a guardian *ad litem* in this case prejudices the ability of the court to request counsel to represent [plaintiff], puts the due process rights of [plaintiff] in jeopardy in any trial that proceeds absent such representation, and effectively precludes the possibility of a binding contract of settlement because of the incompetency of one of the parties." *United States v. 30.64 Acres of Land*, 795 F.2d 796, 805 (9th Cir. 1986).

"The preferred procedure when a substantial question exists regarding the mental competence of a party proceeding *pro se* is for the district court to conduct a hearing to determine whether or not the party is competent, so that a representative may be appointed if needed." *Krain,* 880 F.2d at 1121. If the incompetent litigant refuses to cooperate, however, the district "court may dismiss the case without prejudice." *Id.* (citing *Bodnar v. Bodnar*, 441 F.2d 1103, 1104 (5th Cir. 1971) (affirming a dismissal without prejudice where the plaintiff refused to submit to a mental examination to determine whether she was competent).

Federal Rule of Civil Procedure 17 governs both the determination of a party's capacity to sue and be sued and his status as the real party in interest. The "real party in interest" principle requires that an action "be brought in the name of the party who possesses the substantive right being asserted under the applicable law." 6A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1541 at 321 (2d ed. 1990) ("*Federal Practice & Procedure*" ). Capacity, by contrast, refers to "a party's personal right

to litigate in a federal court." *Id*. § 1542, at 327.

Federal Rule of Civil Procedure 17(c)(2), Fed.R.Civ.P., provides in relevant part:

> (c) Minor or Incompetent Person.
>
> \*   \*   \*   \*
>
> (2) Without a Representative. [A]n incompetent person who does not have a duly appointed representative may sue by a next friend or by a guardian ad litem. *The court must appoint a guardian ad litem--or issue another appropriate order--to protect . . . incompetent person who is unrepresented in an action*.

Rule 17(c), Fed.R.Civ.P. (emphasis added). "Rule 17(c) does not make the appointment of a guardian *ad litem* mandatory. If the court feels that the [person's] interests are otherwise adequately represented and protected, a guardian *ad litem* need not be appointed ." *McLean v. GMAC Mortg. Corp*., 2010 WL 3784527, * 2 (11th Cir. 2010) (citation omitted).

It is undisputed that Plaintiff lacks a "duly appointed representative" and is not otherwise represented within the meaning of Rule 17(c). This Rule, however, provides "no guidance regarding the circumstances that warrant a competency inquiry, or whether a *pro se* plaintiff should receive special consideration under the rule." *Ferrelli v. River Manor Health Care Ctr*., 323 F.3d 196, 201 (2d Cir. 2003), *cert. denied*, 540 U.S. 1195 (2004). In exercising its discretion in this area, a district court should be "mindful of the need to protect the rights of the mentally incompetent[,]" *id.,* and is "under a legal obligation to consider whether [such a] person is adequately protected." *30.64 Acres of Land*, 795 F.2d at 805 (citing *Roberts v. Ohio Casualty Insurance Co*., 256 F.2d 35, 39 (5th Cir. 1958)).

The decision whether to appoint a next friend or guardian *ad litem* [2] rests with

---

[2] "A 'guardian' is defined as 'One who has the legal authority and duty to care for another's person or property, esp. because of the other's infancy, incapacity, or disability.' Black's Law Dictionary (8th ed. 2004). The person protected, the 'ward,' is defined as 'A person, usu. a minor, who is under a guardian's charge or protection.' *Id*. A 'guardian *ad litem*' is a special type of guardian 'usu. a lawyer, appointed by the court to appear in a lawsuit on behalf of the incompetent or minor party.' *Id*. 'Ad litem' is translated from the Latin as 'for the specific lawsuit.'" *In re Pressman-Gutman Co., Inc*., 459 F.3d 383, 408-09

1  the sound discretion of the district court and will not be disturbed unless there has been an
2  abuse of its discretion. *M.K. through Hall v. Harter*, 716 F.Supp. 1333, 1335 (E.D.Cal.
3  1989) (citing *30.64 Acres of Land*, 795 F.2d 796); *Gardner v. Parson*, 874 F.2d 131, 140 (3d
4  Cir. 1989)). "The actual appointment process of guardians *ad litem* remains procedural, and
5  therefore, state rules do not apply to cases brought in federal courts." *Estate of Escobedo v.*
6  *City of Redwood City*, 2006 WL 571354, * 7 (N.D.Cal. 2006) (citing *Gibbs v. Carnival*
7  *Cruise Lines*, 314 F.3d 125, 134-35 (3rd Cir. 2002)); *M.S. v. Wermers*, 557 F.2d 170, 174
8  n. 4 (8th Cir. 1977); *Federal Practice and Procedure* § 1571 at 511-12 (1991); see generally
9  *Hanna v. Plumer*, 380 U.S. 460, 471-72 (1965) (federal courts apply the Federal Rules of
10 Civil Procedure instead of state procedural practices.).

11 **III. Finding of Incompetency and Appointment of Guardian *ad litem***

12        Rule 17(b)(1), Fed.R.Civ.P., mandates that "[c]apacity to sue or be sued is
13 determined . . . for an individual who is not acting in a representative capacity, by the law
14 of the individual's domicile." Rule 17(b)(1), Fed.R.Civ.P. Thus, Plaintiff's mental capacity
15 to sue or maintain this lawsuit is controlled by the law of Plaintiff's domicile, here Arizona.
16 *Estate of Garcia-Vasquez v. County of San Diego*, 2008 WL 4183913, * 4-5 (S.D.Cal.
17 2008); *Hudnall v. Sellner*, 800 F.2d 377, 384 (4th Cir. 1986). "In Arizona, an 'incompetent'
18 person is one who is unable to understand the nature and object of the proceedings or to
19 assist in her defense." *Maricopa County Sheriff's Office v. Greer*, 2010 WL 1779349, * 3
20 (Az.Ct.App. 2010) (citing *Kelly R. v. Arizona Dep't of Econ. Sec.*, 213 Ariz. 17, 22, 137 P.3d
21 973, 978 (Az.Ct.App. 2006)). "In the absence of allegations or facts which indicate that a
22 hearing might be in order, however, 'the trial judge is entitled to gauge a party's competence
23 by [his] personal conduct in court.'" *Id*. at 4 (quoting *Smith v. Rabb*, 95 Ariz. 49, 56-57, 386
24 P.2d 649, 654 (Ariz.1963)).

25        Based upon the recent opinions of Dr. Gill, the independent finding of Superior
26 Court Judge Hess, the Court's own observations, Plaintiff's comments at the November 30,

27 ───────────
28 (3rd Cir. 2006) (citation omitted; italics added).

- 7 -

2010 scheduling conference, and the Defendants' stipulation during the scheduling conference, the Court finds that Plaintiff is unable to substantially assist "an attorney in providing pertinent facts necessary in a court proceeding." (Doc. 123-1 at 1) The Court further finds that appointment of a guardian *ad litem* for Plaintiff is appropriate and necessary in this case to protect Plaintiff's interests. As the district court stated in *Scannavino v. Florida Dep't of Corr.*, 242 F.R.D. 662, 667 (M.D.Fla. 2007), "failure to appoint a guardian *ad litem* undermines the plaintiff's interests and would default both the court's obligation under Rule 17(c) and the requirements of justice."

Pursuant to Rule 17(c), the Court appoints David Eisenberg, Esq., David Eisenberg, P.L.C., 331 N First Ave, Suite 108, Phoenix, AZ 85003-4528, a well-respected and experienced CJA panel attorney, as guardian *ad litem* for Plaintiff in this case. His telephone number is (602) 452-2932. Mr. Eisenberg has no known interests adverse to Plaintiff and must act to protect the Plaintiff's best interests in this litigation. Mr. Eisenberg's services as guardian *ad litem* shall be compensable at the current rate under the Criminal Justice Act ("CJA"), 18 U.S.C. § 3006A(a)(1)(F), (d) (2010).[3] The CJA provides for the appointment of representation to "any financially eligible person who . . . [*inter alia*] is subject to a mental condition hearing under chapter 313 [18 U.S.C. § 4241 *et seq*.] of this

---

[3] Precedent exists that in an unusual and exceptional case, CJA funds may properly pay for a guardian *ad litem*'s fees in representing an indigent, mentally incompetent plaintiff in a federal action. *United States v. Ecker*, 489 F.Supp.2d 130, 138 (D.Mass. 2007) ("The appointment of a second attorney as a guardian *ad litem* located in his district is deemed to be both beneficial to the Court and in the interest of justice. Moreover, the statute itself authorizes compensation for 'services necessary for adequate representation.' 18 U.S.C. § 3006A(e). The Court concludes that the appointment of such a special representative is necessary and advisable here."); *Scannavino*, 242 F.R.D. at 667 (In a civil action brought against the Florida Department of Corrections and others, the attorney's "services as guardian *ad litem* are compensable at the then-current rate under the Criminal Justice Act, 18 U.S.C. § 3006A(d) (2007).")
.

title." 18 U.S.C. § 3006A(a)(1)(F). The Court finds that the appointment of a guardian *ad litem* in this exceptional § 1983 action is necessary in the interest of justice, and that Plaintiff is financially unable to obtain and compensate adequate representation and a guardian *ad litem*.[4]

**IV. Duties and responsibilities of a Guardian *ad litem***

Generally, the role of the guardian *ad litem* in a federal lawsuit "is to protect the interests of the incompetent person." *Richards v. Duke University*, 166 Fed.Appx. 595, 599 (3d Cir. 2006). "The duties of a guardian *ad litem* are essentially ministerial. While he may negotiate a proposed compromise to be referred to the court, he cannot render such a compromise effective merely by giving his consent." *Dacanay v. Mendoza*, 573 F.2d 1075, 1079 (9th Cir. 1978). "It is the court's order approving the settlement that vests the guardian *ad litem* with the legal power to enforce the agreement." *Id*. A guardian *ad litem* is not appointed to serve as counsel but to "act for the [ward] in the cause, with authority to engage counsel, file suit, and to prosecute, control, and direct the litigation." *Noe v. True*, 507 F.2d 9, 12 (6th Cir. 1974) (citing *Fong Sik Leung v. Dulles*, 226 F.2d 74, 82 (9th Cir. 1955)). Moreover, the appointment of a guardian *ad litem* "deprives the litigant of the right to control the litigation." *Thomas v. Humfield*, 916 F.2d 1032, 1034 (5th Cir. 1990). "A guardian *ad litem* is authorized to act on behalf of his ward and may make all appropriate decisions in the course of the specific litigation." *Id.* As Plaintiff's guardian *ad litem*, Mr. Eisenberg may enter into "binding contracts for the retention of counsel and expert witnesses

---

[4] Interestingly, in *Gaddis v. United States*, 381 F.3d 444, 455-57 (5th Cir. 2004) (*en banc*), the Fifth Circuit held that district courts may tax guardian *ad litem* fees as court costs against non-prevailing parties, including the government in Federal Tort Claims Act cases pursuant to Rule 17(c), Fed.R.Civ.P., or, alternatively, 28 U.S.C. § 1920(6) ("Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title."). "As an officer of the court, the expenses of a guardian *ad litem* are properly taxable as costs pursuant to Fed.R.Civ.P. 54(d)." *United States v. Ruger, Model 223 Mini Rifle, Serial No. 18492495*, 2009 WL 2591145, * 3 (W.D.N.C. 2009) (citing *Schneider v. Lockheed Aircraft Corp*., 658 F.2d 835, 854-55 (D.C.Cir. 1981), *cert. denied*, 455 U.S. 994 (1982)).

1 and may settle the claim on behalf of his ward [subject to court approval]." *Id*. at 1033
2 (quoting *30.64 Acres of Land*, 795 F.2d at 805. Unfortunately, the District Court does not
3 have the funds to compensate an attorney on an hourly basis retained by Mr. Eisenberg to
4 represent Plaintiff but such attorney may be engaged on a contingency fee or *pro bono* basis.
5 Mr. Eisenberg is authorized to "repudiate a settlement agreement prior to court approval."
6 *Dacanay*, 573 F.2d at 1079.

7 After appointing a guardian *ad litem*, a district court "maintains a continuing
8 obligation to supervise the guardian *ad litem*'s work." *Neilson v. Colgate-Palmolive Co.*,
9 199 F.3d 642, 652 (2nd Cir. 1999) (citing *Dacanay*, 573 F.2d at 1079; *Noe*, 507 F.2d at 12
10 ("through a guardian *ad litem* the court itself assumes ultimate responsibility for
11 determinations made on behalf of the [ward]"). Of course, the district court may remove the
12 guardian *ad litem*. *Dacanay*, 573 F.2d at 1079; *Hull by Hull v. United States*, 53 F.3d 1125,
13 1127 n. 1 (10th Cir. 1995) (noting that parties seeking to challenge the decisions of a
14 guardian *ad litem* have a remedy of applying to the court to have the guardian *ad litem*
15 removed or to have another guardian *ad litem* appointed); *Garrick v. Weaver*, 888 F.2d 687,
16 693 (10th Cir. 1989) (denying standing to legal representative after appointment of a
17 guardian *ad litem,* reasoning that proper remedy is to petition the court for removal of the
18 guardian *ad litem*).

19 **IT IS ORDERED** that David Eisenberg, Esq., is hereby appointed as guardian
20 *ad litem* for Plaintiff in this case. Mr. Eisenberg's services as guardian *ad litem* shall be paid
21 pursuant to, and are compensable at the current rate of, the Criminal Justice Act, 18 U.S.C.
22 § 3006A(d) (2007).

23 **IT IS FURTHER ORDERED** that the parties may file dispositive motions
24 on or after, but not before, **Friday, March 4, 2011,** but not after **Friday, March 18, 2011**
25 or such dispositive motions will be deemed untimely and summarily denied. Any
26 cross-motion for summary judgment may be filed **within 30 days** after the filing of an
27 adverse party's dispositive motion; provided, however, such motion is related solely to the
28 specific issue directly raised in the initial dispositive motion. Each side is limited to only one

motion for summary judgment that complies with the Local Rule's page limitations[5] unless express prior leave of the Court is granted for good cause shown.

**IT IS FURTHER ORDERED** that the Clerk of Court and Defendants shall provide electronic notice to David Eisenberg, Esq., Plaintiff's guardian *ad litem,* on this order and all future filings herein until further order of the Court.

Dated this 6th day of December, 2010.

*/s/ Lawrence O. Anderson*
Lawrence O. Anderson
United States Magistrate Judge

---

[5] See, LRCiv 7.2(e).

- 11 -