UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| GREGORY K. ADAMSON, ) | |
| ) | |
| Plaintiff, ) | 2:05-cv-02286 JWS |
| ) | |
| vs. ) | ORDER AND OPINION |
| ) | |
| MICHAEL HAYES, *et al.*, ) | [Re: Motion at Docket 188 |
| ) | and Order for Settlement |
| Defendants. ) | Conference] |
| ) | |

## I.  MOTION PRESENTED

At docket 188, defendants City of Tempe, Michael Hayes, Chad Watts, Johnny John, Michael Dobson, Christopher Eastman, Charles Bridges, Jr., Robert Papke, Elliot Campbell, Felipe Amezquita, Anthony Miller, Paul Viso, Dennis Dollarhide, and Paul Gruetzmacher (collectively "defendants") move for summary judgment pursuant to Federal Rule of Civil Procedure 56. Plaintiff Gregory K. Adamson ("plaintiff" or "Adamson") opposes the motion at docket 195. Defendants' reply is at docket 199. Oral argument was not requested, but It would not assist the court.

## II.  BACKGROUND

On July 30, 2003, Tempe police responded to a call reporting that a man with a gun was standing over an unconscious female in the Eckerd's Pharmacy parking lot.

When police arrived, Adamson was pacing near an unconscious woman who was later identified as Melanie Lange.  The officers drew their weapons and covered Adamson.  Police gave various commands to Adamson which were ignored.  Officers saw a black object and a silver object stuffed into Adamson's waistband–at least one officer believed that one of the objects was a gun, and at least one officer could not identify what the objects were.  At least one officer recognized that the black object was a baseball cap when Adamson removed it from his waistband and put it on. Adamson told police he was a minister, a servant of Jesus Christ, that the police were out of their jurisdiction, and that he had the situation under control.  An officer told Adamson that they needed to check on Lange, and Adamson responded that it was in God's hands.  Adamson eventually got in his vehicle and drove away.

     Officers followed Adamson to Champion's Bar and Grill.  Officers again drew their weapons and covered Adamson who got in and out of his vehicle despite commands not to.  Adamson pulled out the silver object, which was a camera, and began taking pictures.  When Adamson, ignorant of the officers' commands, moved away from his vehicle and then turned to walk back to it, defendant Hayes shot him three times in the arm with a less-than-lethal SAGE gun.  Adamson appeared unaffected and got in his car.  When Adamson emerged again, and still did not respond to officers' commands, Hayes shot him in the lower back with the SAGE gun.  Adamson fell to the ground and was arrested.

     Adamson filed suit in 2005 alleging various violations of his civil rights, including a claim that he was subjected to an unreasonable application of force in violation of the Fourth Amendment, based on the weapons pointed at him and having been shot with

the SAGE gun. Adamson initially appeared *pro se* and has been represented by different lawyers since then. A guardian *ad litem* was appointed to protect Adamson's interests in December 2010.[1]

### III.  STANDARD OF REVIEW

Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law."[2] The materiality requirement ensures that "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[3] Ultimately, "summary judgment will not lie if the . . . evidence is such that a reasonable jury could return a verdict for the nonmoving party."[4] In resolving a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party.[5] The reviewing court may not weigh evidence or assess the credibility of witnesses.[6] The burden of persuasion is on the moving party.[7]

---

[1] Doc. 137.

[2] Fed. R. Civ. P. 56(c)(2).

[3] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[4] *Id.*

[5] *Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000).

[6] *Dominguez-Curry v. Nevada Transp. Dept.*, 424 F.3d 1027, 1036 (9th Cir. 2005).

[7] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

## IV.  DISCUSSION

**A.  Use of Force**

Claims that police officers used excessive force are "analyzed under the Fourth Amendment and its 'reasonableness' standard."[8]  That determination "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake."[9]  Courts should consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight."[10]  "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."[11]

It was initially unknown to police whether Adamson had committed a crime in relation to Melanie Lange.  A reasonable officer at Eckerd's Pharmacy would not have known what, if any, crimes were at issue.  Adamson was only convicted of disorderly conduct, but he was also charged with Unlawful Flight[12] and Obstructing Governmental Operation.[13]  When the force was applied, a reasonable officer may have considered

---

[8]*Graham v. Connor*, 490 U.S. 386, 395 (1989).

[9]*Id.* at 396 (internal quotations omitted).

[10]*Id.*

[11]*Id.*

[12]There is expert opinion evidence that the crime of Unlawful Flight was actually the officers' fault.  Doc. 196 at 11.

[13]Doc. 189-1 at 61.

those crimes, but there is evidence that at least one officer was unaware that Adamson had committed any crime.[14] The first factor is not especially helpful.

The next question is whether Adamson posed an immediate threat to the safety of the officers or others. Two of the witnesses who reported the event thought that Adamson had a gun.[15] Officers saw a black object and a silver object in Adamson's waistband, which the officers thought could be guns. The black object was a baseball cap, and the silver object was a camera.[16] Once those objects were identified or at least ruled out as weapons, the extent of the threat that Adamson posed was significantly diminished.[17] Adamson did leave the scene of Eckerd's Pharmacy, where the alleged obstruction took place.[18] However, it is difficult to characterize Adamson's behavior as active resistance or even an attempt to evade arrest.

"Whether the amount of force used was reasonable is usually a question of fact to be determined by the jury."[19] Because the events forming the basis of this lawsuit are unique, and the applicable test does not point strongly in one direction, the court concludes that whether the force used was reasonable is more appropriately resolved by a jury rather than by the court as a matter of law.

---

[14] *See, e.g.*, *id.* at 52 ("Because I did not know the crimes committed by Mr. Adamson, I felt that I could not deploy [a police dog] at the Champion's location.").

[15] *Id.* at 62.

[16] *Id.* at 10, 28.

[17] There is no evidence that there was any other basis to believe that Adamson was armed.

[18] It is unclear why officers allowed Adamson to leave if they believed he was dangerous.

[19] *Barlow v. Ground*, 943 F.2d 1132, 1135 (9th Cir. 1991).

**B. Qualified Immunity**

In *Saucier v. Katz*,[20] the Supreme Court mandated a sequential two-part test for determining whether an official has qualified immunity. The first question was whether, viewed in the light most favorable to the injured party, the facts alleged violated a constitutional right.[21] If so, the question was whether the right was clearly established.[22] In *Pearson v. Callahan*,[23] the Supreme Court determined that "while the procedure set forth [in *Saucier*] is often appropriate" it is not mandatory and that district courts "should be permitted to exercise their sound discretion in deciding which of the two prongs . . . should be addressed first."[24]

"Where the defendant seeks qualified immunity, a ruling on that issue should be made *early in the proceedings* so that the costs and expenses of trial are avoided where the defense is dispositive."[25] The Supreme Court has "repeatedly . . . stressed the importance of resolving immunity questions *at the earliest possible stage in litigation*."[26] This case has been pending since 2005. It is unclear why defendants waited so long to raise the issue.

---

[20] 533 U.S. 194, 201 (2001).

[21] *Id.* at 201.

[22] *Id.*

[23] 555 U.S. 223, 236 (2009).

[24] *Id.*

[25] *Saucier*, 533 U.S. at 200 (emphasis added).

[26] *Pearson*, 555 U.S. at 233 (emphasis added) (internal quotations omitted).

Defendants argue that, even when viewed in the light most favorable to Adamson, the facts alleged do not establish violation of a constitutional right. The court has already determined that whether the force used was reasonable is a question for the jury. Adamson alleges that the officers knew he was unarmed and knew he had nothing to do with Lange's condition. Therefore, in the light most favorable to plaintiff, the allegations establish that Adamson's Fourth Amendment right to be free from unreasonable seizure was violated.

The next question is whether the rights at issue were clearly established. "[T]he general proposition that use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness . . . is not enough."[27] "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."[28] It would not be clear to a reasonable officer that pointing firearms at Adamson–who was standing over an unconscious woman and unresponsive to police commands–in the parking lot of Eckerd's Pharmacy was unlawful, even if Adamson claimed at the scene that he was merely "delivering first aid prayer."[29] Defendants are entitled to qualified immunity on the claims that arise out of that scene.[30] However, at Champions Bar and Grill, where Adamson was shot, the circumstances were different–Lange was no longer present, officers had already allowed Adamson to

---

[27] *Saucier*, 533 U.S. at 201–02.

[28] *Id.* at 202.

[29] Doc. 4 at 7.

[30] Those claims are stated in plaintiff's first cause of action. *Id.* at 9.

leave Eckerd's Pharmacy, and at least some officers knew that Adamson did not have a weapon.

Adamson cites *Deorle v. Rutherford*[31] in support of his argument that the right violated was clearly established. That case supports the proposition that shooting an unarmed suspect with a less-than-lethal weapon can constitute an unreasonable application of force. Furthermore, "the law . . . recognize[s] as a general principle that pointing a gun to the head of an apparently unarmed suspect during an investigation can [also] be a violation of the Fourth Amendment."[32] Therefore, construing the facts in the light most favorable to Adamson, a reasonable officer at Champion's Bar and Grill would have known that they were violating Adamson's rights.

## C.  Claims Against the City

Defendants argue that the City of Tempe is entitled to summary judgment in its favor because Adamson has not presented evidence of an official policy, custom or practice leading to the allegedly unconstitutional conduct.[33] Plaintiff does not respond to defendants' contention. The court agrees with defendants that Adamson has not demonstrated "the existence of a municipal policy or custom [or] a causal nexus between" the alleged constitutional violation and that custom.[34]

---

[31] 272 F.3d 1272 (9th Cir. 2001).

[32] *Robinson v. Solano County*, 278 F.3d 1007, 1015 (9th Cir. 2002).

[33] *See Monell v. N.Y. City Dept. of Soc. Svcs.*, 436 U.S. 658, 694–95 (1978).

[34] *Canton v. Harris*, 489 U.S. 378, 385 (1989).

**D. Claims Against Defendant Viso**

Defendants argue that Viso was not a party to the incident at Eckerd's Pharmacy or the incident at Champion's Bar and Grill. Adamson does not dispute defendants' contention. The court agrees that Viso is entitled to summary judgment on the claims against him.

## V.  CONCLUSION

For the reasons above, defendants' summary judgment motion at docket 188 is **GRANTED** in part and **DENIED** in part as follows:

1) It is **GRANTED** as to the claims arising out of the events at Eckerd's Pharmacy, stated in plaintiff's first cause of action, because the relevant defendants are entitled to qualified immunity.

2) It is **GRANTED** as to the claims against the City of Tempe.

3) It is **GRANTED** as to the claims against defendant Viso.

2) It is **DENIED** with respect to the claims arising out of the events at Champion's Bar and Grill, as stated in plaintiff's second cause of action.

This order has significantly narrowed the issues which remain for resolution. After considering the record presented, the court is strongly of the opinion that the parties should settle the remainder of this dispute. Accordingly, **IT IS ORDERED** that the Clerk of Court refer this matter to a Magistrate Judge for a settlement conference. Given the age of this case, this court requests that the Magistrate Judge conduct the

settlement conference as soon as reasonably convenient to the parties and the Magistrate Judge.

DATED this 12th day of September 2011.

                                                /s/ JOHN W. SEDWICK
                                     UNITED STATES DISTRICT JUDGE