UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | | |
|---|---|---|
| GREGORY K. ADAMSON, | ) | |
| | ) | |
| Plaintiff, | ) | 2:05-cv-02286 JWS |
| | ) | |
| vs. | ) | ORDER AND OPINION |
| | ) | |
| MICHAEL HAYES, *et al.*, | ) | [Re:  Motion at docket 227; |
| | ) | Report at docket 246; oral |
| Defendants. | ) | motion to withdraw as |
| | ) | Guardian *ad Litem*] |

## I.  MATTERS BEFORE THE COURT

At docket 227, plaintiff Gregory K. Adamson's lawyers J. Blake Mayes and David V. Telles (jointly "the Lawyers") moved to withdraw as counsel for Mr. Adamson.  The magistrate judge directed the Lawyers to file supplemental materials under seal explaining in further detail why they should be relieved.  This court then referred the Lawyers' motion to Magistrate Judge Anderson for the purpose of conducting a sealed hearing and providing a recommendation for disposition of the Lawyers' motion.

During the hearing, Mr. Adamson's guardian *ad litem*, David Eisenberg, moved to withdraw from his position as guardian *ad litem* asserting, among other things, that Mr. Adamson had accused him of committing fraud.  The magistrate judge directed the Lawyers and Mr. Eisenberg to provide copies of communications with Mr. Adamson which might reflect verbal abuse, threats, and other conduct by Mr. Adamson.  The Lawyers filed [under seal at docket 239] redacted copies of six emails received from Mr. Adamson.  Mr. Eisenberg also filed [under seal at docket 240] several emails received from Mr. Adamson, as well as an email he sent to Mr. Adamson

In response to the magistrate judge's order at docket 236 requiring him to show cause why the guardian *ad litem* should not be relieved of his responsibility and Mr. Adamson's case dismissed without prejudice, Mr. Adamson filed [under seal at docket 243] a 41-page handwritten document with approximately 175 attached pages of printed exhibits.  The exhibits included numerous email exchanges between Mr. Adamson and the Lawyers and between Mr. Adamson and Mr. Eisenberg, many of which had been annotated by Mr. Adamson.  The exhibits also included copies of various publications and documents of interest to Mr. Adamson, some of which it appears he sent to the Lawyers and Mr. Eisenberg.[1]

Magistrate Judge Anderson filed a well-reasoned report under seal at docket 246 recommending that the Lawyers' motion to withdraw be granted.  On behalf of Mr. Adamson, his guardian *ad litem* filed a response at docket 251 pointing out that allowing the Lawyers to withdraw would leave Mr. Adamson without counsel and at risk of having his case dismissed.  Mr. Adamson himself also filed a 38-page handwritten response under seal at docket 252 which largely duplicates his filing at docket 243.

The Lawyers' motion to withdraw at docket 227, the oral motion by Mr. Eisenberg to withdraw as guardian *ad litem*, and the future course of this litigation are now ripe for determination by this court.

## II.  BACKGROUND

### A.  Incidents Giving Rise to Lawsuit

On July 30, 2003, Tempe police responded to a report that a man with a gun was standing over an unconscious female in an Eckerd's Pharmacy parking lot.  When officers arrived at the scene, Mr. Adamson was pacing near an unconscious woman.  The officers drew their weapons and gave various commands to Mr. Adamson which

---

[1] The attached publications included multiple copies of such things as an article titled "Legal Abuse Syndrome" by Karin Huffer; various articles or extracts with headings such as "Is Your Attorney Engaged in Fraud," "'Fraud upon the court' makes void the orders and judgments of that court;" an extract which appears to be taken from a book entitled "Mental Health and Chiropractic Care;" an extract titled "Why Trusting Lawyers Loses Lawsuits!;" a definition of "Misprision of felony" from Wikipidia; a document obtained online titled "Common Assault Sentencing Guidelines;" and annotated extracts from the docket in the case at bar.

were ignored.  Officers saw a black object and a silver object in Mr. Adamson's waistband.  At least one officer believed that one of the objects was a gun, but the black object was recognized as a baseball cap when Mr. Adamson pulled it out and put it on.  Mr. Adamson told the officers that he was a minister, a servant of Jesus Christ, that the police were beyond their jurisdiction, and that Mr. Adamson had things under control.  When an officer told Mr. Adamson that the police needed to check on the unconscious woman, Mr. Adamson responded that the matter was in God's hands.  Mr. Adamson eventually got in his vehicle and drove away.

Mr. Adamson was followed to Champion's Bar and Grill where officers again drew their weapons while Mr. Adamson got in and out of his vehicle despite the issuance of commands not to do so.  Mr. Adamson pulled out a silver object, which was a camera, and began taking pictures.  When Mr. Adamson moved away from his vehicle and then turned to walk back toward it, officer Hayes shot him three times in the arm with a less-than-lethal SAGE gun.  Mr. Adamson appeared unaffected and got in his car.  When Mr. Adamson emerged again, and still did not respond to officers' commands, officer Hayes shot him in the lower back with the SAGE gun.  Mr. Adamson fell to the ground.  He was then placed under arrest.

**B. Procedural History of Lawsuit**

Mr. Adamson filed suit in 2005 alleging various violations of his civil rights, including a claim that he was subjected to an unreasonable application of force in violation of the Fourth Amendment, based on the weapons pointed at him and having been shot with the SAGE gun.  Mr. Adamson initially appeared and proceeded *pro se* until March 6, 2007, when Judge Carroll, to whom this case was originally assigned, appointed Carmen Fisher to represent Mr. Adamson.[2]  Judge Carroll granted Mr. Adamson's request that Ms. Fisher be removed on April 21, 2008.[3]  Although it is clear from the order which removed Ms. Fisher, Judge Carroll expected substitute

---

[2]Doc. 48.

[3]Doc. 90.

Case 2:05-cv-02286-JWS   Document 253   Filed 09/18/12   Page 4 of 10

counsel to be obtained, Mr. Adamson proceeded *pro se* for more than two years after Ms. Fisher was discharged.

Defendants filed several dispositive motions while Mr. Adamson was proceeding without counsel.  On June 29, 2010, Judge Carroll stayed further proceedings for 90 days to allow Mr. Adamson to file information concerning his health and his mental health and to seek a lawyer.[4]  Mr. Adamson responded to Judge Carroll's invitation to present information in a filing at docket 123.  After ordering defendants to respond to Mr. Adamson's filing, Judge Carroll recused from the lawsuit, and the undersigned judge was assigned on October 19, 2010.[5]

After reviewing Mr. Adamson's filing at docket 123 and defendants' response, this court observed that "Adamson's briefing can be read to suggest that he understands the nature of the proceedings, but he has presented a psychologist's report identifying various mental issues.  In the psychologist's opinion Adamson does not 'show the requisite capacity to play an appropriate role as a plaintiff in a legal proceeding' or 'to participate with an attorney in providing pertinent facts necessary in a court proceeding.'"[6]  Construing Mr. Adamson's filing at docket 123 as a request for a competency hearing and finding substantial evidence of mental health issues in the materials presented by Mr. Adamson, the court ordered a competency hearing.[7]

The competency hearing was conducted by Magistrate Judge Anderson who concluded that Mr. Adamson was not competent to proceed on his own.  Mr. Eisenberg, a respected Phoenix lawyer, was appointed by the magistrate judge to act as Mr. Adamson's guardian *ad litem* in December 2010.[8]  Further pre-trial matters were

---

[4] Doc. 122.

[5] Docs. 126 and 128.

[6] Doc. 129.

[7] "A party proceeding *pro se* in a civil lawsuit is entitled to a competency determination when substantial evidence of incompetence is presented."  *Allen v. Calderon*, 408 F.3d 1150, 1153 (9th Cir. 2005).

[8] Doc. 137.

then referred to Magistrate Judge Anderson pursuant to 28 U.S.C. § 636.[9] Subsequently, G. David DeLozier appeared as counsel for Mr. Adamson.[10]

While Mr. DeLozier was representing Mr. Adamson, defense motions for summary judgment were fully briefed and decided. This court granted the motion at docket 176 and awarded summary judgment to defendants Arpaio and Maricopa County dismissing the claims against them with prejudice.[11] This court granted the summary judgment motion at docket 188 in part and denied it in part. More particularly, the court granted the pertinent defendants summary judgment based on qualified immunity as to the events outside Eckerd's Pharmacy, granted summary judgment on all claims against the City of Tempe and Paul Viso, but denied summary judgment as to the claims arising from the events at Champion's Bar and Grill.[12] These claims are pled in the Second Cause of Action in the Amended Complaint at docket 4. They are the only claims which remain for decision.

Following the orders on the summary judgment motions, a settlement conference was conducted by Magistrate Judge Burns. The case did not settle.[13] The same day that the settlement conference failed, Mr. DeLozier moved to withdraw as plaintiff's lawyer stating, among other things, that "the relationship between Gregory Adamson and counsel has deteriorated to the point that further representation cannot continue."[14] Magistrate Judge Anderson permitted Mr. DeLozier to withdraw and directed the guardian *ad litem* to pursue the possibility that Mr. Mayes and Mr. Telles might agree to

---

[9]Doc. 138.

[10]The appearance was conditional upon Mr. DeLozier's right to withdraw as counsel for any reason for a period of 60 days. *See* docs. 139, 140, and 141.

[11]Doc. 201.

[12]Doc. 203.

[13]Doc. 207.

[14]Doc. 206 at p. 1.

appear as counsel for Mr. Adamson.[15]  Those gentlemen then appeared as counsel for Mr. Adamson.[16]

### III.  DISCUSSION

**A.  Motion at docket 227 and Report at docket 246**

The district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate."[17]  When reviewing a magistrate judge's report and recommendation in a case such as this one, the district court conducts *de novo* review of all conclusions of law,[18] and any findings of fact to which objections have been made.[19]  Uncontested findings of fact are reviewed for clear error.[20]  Having reviewed the file and applied the articulated standard of review, this court concludes that the magistrate judge has correctly found the facts and applied the law.  The report at docket 246 is a thorough and carefully reasoned one which is correct in all material respects.

The objection at docket 251 points out that if counsel is allowed to withdraw, Mr. Adamson will have no lawyer to represent his interest in the litigation.  While that is true, it is an insufficient reason under the circumstances to deny the motion to withdraw.  It is clear from the documents filed by all parties, including Mr. Adamson himself, that Mr. Adamson has no confidence or trust in the Lawyers.  Indeed, quite the opposite is the case.  He accuses the Lawyers of fraud and disloyalty.  The objection at docket 252 is essentially a litany of perceived misconduct by the Lawyers and the guardian *ad litem*.  That document well illustrates why it is impossible for the Lawyers to continue

---

[15] Doc. 212.

[16] Doc. 213.

[17] 28 U.S.C. § 636(b)(1).

[18] *Barilla v. Ervin,* 886 F.2d 1514, 1518 (9th Cir. 1989), *overruled on other grounds by Simpson v. Lear Astronics Corp.*, 77 F.3d 1170, 1174 (9th Cir. 1996).

[19] 28 U.S.C. § 636(b)(1).

[20] *Taberer v. Armstrong World Industries, Inc.,* 954 F.2d 888, 906 (3d Cir. 1992).

representing Mr. Adamson for he believes that his "condition has exascerbated (sic) and worsened to the point he feels like he could have a nervous breakdown or stroke because of the neglect of attorneys Mayes–Telles and Eisenberg.[21]"

For the reasons above, this court will adopt the report at docket 246 and will grant the motion at docket 227.

## B. Guardian *Ad Litem's* Motion to Withdraw

Mr. Adamson's opinion of Mr. Eisenberg is essentially the same as his opinion of the Lawyers. For example, in his response at docket 243, Mr. Adamson succinctly reveals the depth of mistrust he feels toward both the Lawyers and the guardian *ad litem*:

> "The plaintiff has accused them all recently of committing 'Fraud upon the Court' and on this plaintiff. The Court cannot move forward from here until attorney Eisenberg is replaced. We move this court now to replace him as Guardian ad Litem. We also move the Court now to appoint replacement attorney for the Firm of Mayes Telles."[22]

It is apparent from the documents on file that it is impossible for Mr. Eisenberg to continue to protect the interests of Mr. Adamson. The motion by the guardian *ad litem* to terminate his status will be granted.

## C. Disposition of Case

Mr. Adamson has been found incompetent to conduct this litigation. He has made scurrilous accusations and threats against his guardian *ad litem*. Anyone having the ability to serve as a guardian *ad litem* for Mr. Adamson would surely refuse the opportunity to do so in light of his treatment of Mr. Eisenberg. Mr. Adamson has had four lawyers. Mr. Adamson successfully sought to have the first one, Ms. Fischer, removed. The second, Mr. DeLozier, was relieved by Judge Carroll after Mr. DeLozier pointed to the deterioration in the attorney-client relationship. The last two have just been relieved based on Mr. Adamson's open expressions of hostility and mistrust.

---

[21] Doc. 252 at p. 7.

[22] Doc. 243 at p. 3.

Given Mr. Adamson's accusations against those lawyers, it is nearly inconceivable that a competent attorney would agree to represent Mr. Adamson.

This case cannot proceed to trial in the current circumstances, so the court must determine what to do with it. There are only two options. The court might stay the proceedings, or the court might dismiss the case without prejudice. While dismissal would not be imposed as a sanction *per se*, the court believes consideration of Ninth Circuit law on the imposition of case dispositive sanctions provides a useful analytical guide.

Before imposing a case dispositive sanction, the Ninth Circuit has directed district courts to consider five criteria: public interest in prompt conclusion of litigation; need to manage the court's docket; risk of prejudice to the party asking for the sanction; policy favoring disposition of disputes on their merits; and suitability of less drastic sanctions.[23] The first consideration favors dismissal, for the probability of concluding the remaining claims on the merits in the foreseeable future approaches zero.

Management of the court's own docket also favors dismissal. Experience teaches that so long as a plaintiff in a diminished state of mental health has an open case on the court's docket that person will periodically file papers which require the attention of the court, taking time away from other tasks. The risk of prejudice to the other parties if this case is allowed to lie dormant on the docket is significant. In addition to the fact that the defendants would remain subject to potential liability and further litigation costs, the passage of additional time would risk further reducing the ability to resolve the case on the merits. The claims giving rise to the litigation took place in 2003. Witnesses' memories are already dimmed by the passage of time. Allowing still more time to pass only exacerbates the problem.

In this--as in any case--the policy favoring disposition of disputes on the merits weighs against dismissal. However, this factor is less significant in the case at bar than in many others, because the court has already resolved most of Mr. Adamson's claims

---

[23] *Connecticut General Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1096 (9th Cir. 2007).

on the merits or on qualified immunity grounds.  Moreover, it appears to this court that Mr. Adamson's remaining claims are weak on the merits.

The alternative to dismissal is to stay the case in the hope that Mr. Adamson's mental health will be restored so that he regains the ability to deal with his affairs in a rational and civil manner.  Given his behavior in 2003, which gave rise to this case; the determination of incompetency by Magistrate Judge Anderson; Mr. Adamson's mistreatment of the guardian *ad litem* and several lawyers in the course of this litigation; and Mr. Adamson's lack of resources to obtain mental health treatment, any hope that he might regain his mental health within a reasonable time is a very slim one.  On the other hand, staying the case indefinitely leaves the long-suffering defendants to suffer further.  Meanwhile, the entire purpose of the litigation, which is to resolve the parties' claims and defenses on the merits, is placed at increasing risk by the passage of time. The events giving rise to the litigation took place nine years ago.  It may be added that the magistrate judge warned Mr. Adamson that he needed to show cause why this case should not be dismissed without prejudice, yet his response fails to do so.

The preceding analysis establishes that dismissal without prejudice is a much more appropriate alternative than staying the litigation.

## IV.  CONCLUSION

For the reasons set forth above:

1) The report at docket 246 is approved and adopted by this court;

2) The motion at docket 227 is **GRANTED** such that Mr. Mayes and Mr. Telles are relieved from their duty to represent Mr. Adamson;

3) The motion by Mr. Eisenberg to withdraw is **GRANTED** such that he is relieved from his responsibility as guardian *ad litem* for Mr. Adamson;

4) All remaining claims are dismissed without prejudice; and

5) The Clerk will please enter a judgment that plaintiff take nothing from any of the defendants based on this order and the orders at dockets 201 and 203 such that all claims are dismissed with prejudice, except that plaintiff's claims in his Second Cause of Action in the Amended Complaint at docket 4 against defendants Michael Hayes, C.

Watts, D. Dollarhide, C. Eastman, R. Papke, E. Campbell, Unknown Gruetzmacher, Unknown Amezquita, and T. Miller are dismissed without prejudice.

    DATED this 17th  day of September 2012.

                                      /s/ JOHN W. SEDWICK
                              UNITED STATES DISTRICT JUDGE